IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| MELVIN SANTIAGO, SR. ) | |
| 413 5th Avenue ) | |
| Brooklyn, MD  21225 ) | |
| ) | |
|    Plaintiff ) | |
| ) | |
|    v. ) | Civil Action No. |
| ) | |
| THE MAYOR AND CITY COUNCIL OF ) | |
|   BALTIMORE ) | |
|  s/o George A. Nilson, City Solicitor ) | |
|  101 City Hall, Baltimore, MD  21202 ) | |
| ) | |
|    and ) | |
| ) | |
| THE BALTIMORE CITY POLICE ) | |
|   DEPARTMENT ) | |
| s/o Kevin Davis, Commissioner ) | |
| 242 W. 29th Street, Baltimore, MD  21211 ) | |
| ) | |
|    Defendants ) | |

**COMPLAINT**

(Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.)

**I.    Parties**

1. Plaintiff Melvin Santiago ("Officer Santiago") has been working for the Baltimore City Police Department as a Police Officer since February 25, 2003, and thus has been an "employee" as defined in Title VII, 42 U.S.C. § 2000e(f) for all relevant times referenced in this Complaint.

2. Officer Santiago is Hispanic in terms of his race.

3. Defendant Mayor and City Council of Baltimore is a municipal corporation duly organized and existing under the laws of the State of Maryland, and it is an "employer" of Officer Santiago as defined in Title VII, 42 U.S.C. § 2000e(b).

4. Defendant Baltimore City Police Department is a governmental agency of the Mayor and City Council of Baltimore, and it is an "employer" of Officer Santiago as defined in Title VII, 42 U.S.C. § 2000e(b).

## II.   Jurisdiction and Venue

5. All allegations raised in this complaint refer to events which took place in Baltimore City; therefore, jurisdiction and venue are proper in this Court pursuant to Title VII, 42 U.S.C. § 2000e5(f)(3).

## III.   Exhaustion of Administrative Remedies

6. Officer Santiago filed a charge of discrimination with the Baltimore Community Relations Commission and the United States Equal Employment Opportunity Commission ("EEOC") on August 12, 2014, alleging that he was passed over for promotion to the rank of Sergeant starting in October of 2013 and continuing through August of 2014, because of his race and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

7. On September 10, 2015, EEOC issued a "right to sue" letter to Officer Santiago, who is filing this lawsuit within 90 days of the issuance of this letter.

## IV.   Facts

A. *Background, History of Discrimination Against Officer Santiago, and Prior Federal Lawsuits Alleging Discrimination by BPD*

8. From 2004 to 2010, Officer Santiago worked as a narcotics detective for BPD. His last two years as a narcotics detective were in the Southern District.

9. During his tenure as a narcotics detective, Officer Santiago received numerous citations and awards, and he had an excellent record of arrests, execution of warrants, and recovery of illegal narcotics, guns, and U.S. currency.

10. Officer Santiago, due to his successes noted in the previous paragraph, was subject to numerous complaints by individuals who were upset at his seizure of property and money which had been in their possession; but no allegations against him as a detective were ever sustained by BPD's Internal Affairs Division, and thus no charges were brought against him as a narcotics detective before BPD's Departmental Trial Board.

11. Despite Officer Santiago's excellent record as a narcotics detective, he was transferred against his will to uniform patrol around October of 2010. The primary reason given was that Officer Santiago had too many complaints filed against him.

12. Non-Hispanic narcotics detectives in the Southern District who had a similar number of complaints filed against them were not transferred from their assignments, as Officer Santiago was.

13. On June 22, 2011, at the end of a busy double shift on uniform patrol, Officer Santiago searched a vehicle during a stop, turning up a handgun and marijuana.

14. In the course of searching the car, Officer Santiago also confiscated an I-phone and $430 in cash, which he improperly placed in a cabinet at work over the weekend due to his fatigued condition and stress.

15. When Officer Santiago returned to work, he was made aware that the individual had come to the Southern District police station requesting the I-phone and cash. Officer Santiago contacted his supervisor, Sergeant Leitch, and then packaged and submitted the I-phone and cash to the Evidence Control Unit, as Sergeant Leitch instructed him.

16. The same day, Officer Santiago was notified that his police powers, his opportunity to earn overtime, and his ability to testify in court were suspended. Major Margaret Barillaro, the highest ranking officer for the Southern District, punitively tried to place Officer Santiago on a "graveyard shift" overnight. Non-Hispanic officers were not subject to these kinds of measures for incidents of this nature.

17. Allegations based on this incident were sustained by BPD's Internal Affairs Division against Officer Santiago. The case was then referred to a Charging Committee, which included Major Barillaro.

18. Under the influence of Major Barillaro, the Charging Committee issued charges against Officer Santiago of conduct unbecoming an officer, knowingly making a false statement, intentional violation of a law, unsatisfactory performance, failing to act with integrity, and mishandling property.

19. These charges were pursued aggressively against Officer Santiago.  In the fall of 2013, Officer Santiago's counsel and representatives of the BPD and the Mayor and City Council of Baltimore were close to reaching a plea deal in the case against Officer Santiago pending before the Departmental Trial Board, but the BPD and Mayor and City Council of Baltimore's representatives backed out abruptly, opting to seek Officer Santiago's termination.

20. Similarly situated non-Hispanic officers did not face such a panoply of charges for these kinds of incidents, and they were offered plea deals which resulted in minimal to modest punishment, without protracted proceedings and trials before the Departmental Trial Board where their termination was sought.

21. On November 6, 2013, the charges against Officer Santiago were heard by a panel of three officers who were appointed by the Commissioner to the Departmental Trial Board, in accordance with Baltimore City Code of Public Local Laws § 16-11(b).  Officer Santiago pled guilty to the charge of mishandling property, and not guilty on the remaining charges.  After the prosecution presented its case, the Departmental Trial Board granted Officer Santiago's motion for acquittal on all of the outstanding charges.

22. The Departmental Trial Board panel recommended, contingent upon the Commissioner's approval, that a middle letter of reprimand be issued to Officer Santiago, that he lose two days of leave, and that he be suspended one day without pay.

23. Pursuant to the Law Enforcement Officers' Bill of Rights, *Md. Code Ann.*, Public Safety § 3-108(a)(3) and (d), not guilty findings terminate an action, and the Commissioner is required to issue a final order within 30 days after receiving the recommendations of the Departmental Trial Board.

24. In Officer Santiago's case, the Commissioner issued a final order on March 12, 2014, over four months after the Departmental Trial Board issued its findings and recommendations.

25. Despite Officer Santiago's vindication with the not guilty findings by the Departmental Trial Board on all charges except the relatively minor charge of mishandling property, to which he pled guilty; the Commissioner increased the recommended punishment of two days loss of leave, one day suspension without pay, and a middle letter of reprimand to 30 days suspension without pay and a severe letter of reprimand.

26. Around the same time as Officer Santiago's trial, two other officers, neither of whom were Hispanic, had cases in which the Departmental Trial Board made disciplinary recommendations to the Commissioner.  In sharp contrast to his treatment of Officer Santiago, the Commissioner lowered the punishments recommended by the Departmental Trial Board for the two other officers.

27. Unequal promotion of officers based on race is a longstanding concern within BPD, see generally Vanguard Justice Society, Inc. v, Hughes, 592 F.Supp. 245 (D.Md. 1984); Vanguard Justice Society, Inc. v, Hughes, 471 F.Supp. 670 (D.Md. 1979), as is unequal discipline of officers based on race.   Pursuant to a settlement

agreement approved by Judge Quarles on July 13, 2009 in the case of <u>Hopson, et al. v. Mayor and City Council of Baltimore, et al.</u>, Case 1:04-cv-03842, Document 306, pages 5 to 8 of 20, the same Defendants in this case agreed, *inter alia*, to offer at least five leadership training classes for women and minorities over a five year period and to provide a consultant with reports every six months reflecting all disciplinary activity within the BPD over the prior year.  The reports from the BPD were to include "at least the following fields of information as applicable for each accused individual and incident: the race, sex, age, rank, and years of service of the accused officer, the date and substance of the complaint, charging party (source of complaint), date and substance of disciplinary charges/determinations of Charging Committee, date and substance of IID findings, date and substance of trial board findings/determinations, final disposition including the sanction imposed, if any, and any comment (in mitigation or aggravations or otherwise)…."  Case 1:04-cv-03842, Document 306, page 6 of 20.  However, these data reports from BPD and consultant reports based on the same data were subject to a confidentiality agreement.  <u>Id.</u> at pages 19-20.

   B.  *The Defendants' Discriminatory Failure to Promote Officer Santiago*

28. On or around June 9, 2012, Officer Santiago took the Police Sergeants Examination for Baltimore City.  His score placed him at 46th out of 218 officers eligible for promotion in the period from October 22, 2012 to October 21, 2014.

29. Baltimore City Code of Public Local Laws § 16-10(c) provides that the "rule of five" must be followed in promotional appointments to the rank of Sergeant. According to the rule of five, the Commissioner must consider the top five scoring applicants from the examination list when making appointments to the rank of Sergeant. The four applicants who are skipped over for a particular appointment to sergeant remain in the "group of five" for the next appointment, with the next highest scoring applicant on the list added to the group.

30. Officer Santiago believed that the Commissioner was passing over him for promotion to the rank of Sergeant because of the outstanding disciplinary charges against him, discussed above.

31. While the Commissioner's decision to suspend Officer Santiago for 30 days without pay and to issue him a severe letter of reprimand massively escalated the Disciplinary Trial Board's recommended sanctions; Officer Santiago wanted to bring finality to the internal case against him, so that he could both avoid retaliation for challenging the Commissioner's decision and be promoted to Sergeant. Accordingly, on or around April 1, 2014, Officer Santiago signed the severe letter of reprimand from the Commissioner.

32. Officer Santiago continued to be skipped over tor all appointments to Sergeant made through October 21, 2014, even though he was always in the "group of five" eligible for appointment. Some non-Hispanic officers on the list for promotion, who had been found guilty of violating Departmental rules as Officer Santiago had, nevertheless were promoted to Sergeant.

33. Due to his frustration at being passed over for promotion to Sergeant, Officer Santiago complained to the Fraternal Order of Police and to the Vanguard Justice Society, a voluntary association of mostly minority Baltimore Police Department officers to which he belongs.  On at least two occasions, the presidents of the Fraternal Order of Police and the Vanguard Justice Society met with the Commissioner to advocate for Officer Santiago's promotion to Sergeant.  The Commissioner told them that he did not feel like promoting Officer Santiago to Sergeant, and that they had to agree to disagree.

34. The Commissioner's failure to promote Officer Santiago to the rank of Sergeant, in the face of more favorable treatment of non-Hispanics on the promotional list, was discriminatory; and it accorded with the longstanding discriminatory treatment given to Officer Santiago in his transfer from the position of narcotics detective, the suspension from uniform patrol, the pursuit of excessive charges against him, and the Commissioner's dramatic increase of the sanctions recommended by the Departmental Trial Board.

**V.     Prayer for Relief**

35. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it unlawful for an employer to discriminate against an employee on the basis of race, including in the course of making promotions.

36. Based on the Defendants' discriminatory failure to promote Officer Santiago to the rank of Sergeant in 2013 and 2014, and his timely filing of a charge with the

EEOC in August of 2014, Officer Santiago prays that the Court award him the following relief:

a. A declaratory judgment that the Defendants' conduct violated his rights;

b. Affirmatively requiring the Defendants to promote him to the rank of Sergeant;

c. Compensatory damages in the amount of $300,000 for the financial and emotional harm he has suffered, including pay he would have earned if he had been promoted to Sergeant starting in October of 2013;

d. Prejudgment and postjudgment interest;

e. Reasonable attorneys' fees, expenses, and costs;

f. Such other relief as the Court shall deem just and proper.

**VI.   Demand for Jury Trial**

37. Officer Santiago hereby demands a jury trial.

Respectfully submitted,

____/s/_____
Curtis B. Cooper, Esq.
*Federal Bar No. 28060*
401 Washington Avenue, Ste. 200
Towson, MD  21204
(410) 825-4030; (410) 938-8668 [fax]
curtis@curtiscooperlaw.com
Attorney for Plaintiff Melvin Santiago, Sr.