IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELVIN SANTIAGO, SR., :

    Plaintiff, :

v. :

                                            Civil Action No. GLR-15-3734

THE BALTIMORE CITY POLICE :
DEPARTMENT,
                                   :

    Defendant.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant the Baltimore City Police Department's ("BPD") Motion for Summary Judgment (ECF No. 43). The Motion is ripe for disposition, and no is hearing necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

## I.    BACKGROUND[1]

BPD has employed Santiago, a Hispanic man, as a police officer since February 25, 2003. (2d Am. Compl. ¶¶ 1–2, ECF No. 20). From 2004 to 2010, Santiago worked as a narcotics detective and received several citations and awards for his performance. (Id. ¶¶ 8–9). Around October of 2010, BPD transferred Santiago to uniform patrol because too many individuals whose money and property he had seized filed complaints against him. (Id.

---

[1] Unless otherwise noted, the Court sets forth from Plaintiffs' Second Amended Complaint (ECF No. 20). To the extent that the Court discusses facts that Plaintiffs do not allege in their Amended Complaint, those facts are uncontroverted, and the Court views them in the light most favorable to Defendants. The Court will address additional facts when discussing applicable law.

¶¶ 10–11). On June 22, 2011, while on uniform patrol, Santiago searched a car during a traffic stop and confiscated a handgun, marijuana, $430 in cash, and an iPhone. (Id. ¶¶ 13–14). Instead of following BPD policy, which required him to submit the items to the Evidence Control Unit, Santiago placed the cash and iPhone in a cabinet. (Id. ¶¶ 14–15). When the owner of the cash and iPhone came to the police station to get them back, Santiago contacted his supervisor, who instructed him to submit the property to the Evidence Control Unit. (Id. ¶ 15).

The incident was reported to BPD's Internal Affairs Division, which began an investigation. (Santiago Dep. 101:6–14, Feb. 8, 2017, ECF No. 43-4). After its investigation, Internal Affairs sustained the allegations and referred the incident to a Charging Committee. (2d Am. Compl. ¶ 17). The Charging Committee then issued charges of conduct unbecoming of an officer, knowingly making a false statement, intentional violation of a law, unsatisfactory performance, failing to act with integrity, and mishandling property against Santiago. (Id. ¶¶ 17–18).

On June 9, 2012—while his charges were still pending—Santiago took the Police Sergeants Examination for Baltimore City, after which he placed 46th out of 218 officers eligible for promotion from October 22, 2012 to October 21, 2014. (Id. ¶ 28). According to Baltimore City Code of Public Local Laws § 16-10(c), the Commissioner must consider the top five scoring applicants from the examination list when promoting officers to the rank of Sergeant. (Id. ¶ 29). The four applicants who are skipped over for a particular appointment

to Sergeant remain in the group of five for the next appointment. (Id.). BPD policy, however, does not permit the Commissioner to consider applicants who have an Internal Affairs investigation pending. (Pl.'s Opp. Mot. Summ. J. Ex. 4 at 3, ECF No. 53-4). The Commissioner passed over Santiago for the promotion to Sergeant. (Id. ¶¶ 30, 32). Santiago believed the Commissioner passed over him because of his pending disciplinary charges. (Id. ¶ 30).

On November 6, 2013, a panel of three officers on the Departmental Trial Board heard the charges against Santiago. (Id. ¶ 21). Santiago pled guilty to the mishandling property charge. (Id.). The Trial Board acquitted Santiago of the remaining charges. (Id.).

Nonetheless, on March 12, 2014, the Commissioner issued a final order suspending Santiago for thirty days without pay and requiring him to sign a severe letter of reprimand. (Id. ¶¶ 24–25). On April 1, 2014, Santiago signed the letter. (Id. ¶ 31). The Commissioner continued to pass over Santiago for the promotion to Sergeant through October 21, 2014, even though Santiago was in the group of five. (Id. ¶ 32). Meanwhile, Candidate 6,[2] a non-Hispanic officer who was in the same group of five as Santiago, was promoted to Sergeant during this period despite having an Internal Affairs investigation pending. (Id.; Def.'s Mot. Summ. J. ["Def.'s Mot."] Ex. 22, ECF No. 44-9). Santiago believes he was not promoted because of his race. (Id. ¶ 34).

---

[2] To preserve the privacy of the other officers, the parties shared records under an order of confidentiality. Accordingly, to preserve the confidentiality of those officers, the Court will refer to them by their numerical ranking on the initial promotions list, which the

3

On August 12, 2014, Santiago filed a charge of discrimination with the Baltimore Community Relations Commission and the United States Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 6). On September 10, 2015, the EEOC issued a right to sue letter to Santiago. (Id. ¶ 7). On December 7, 2015, Santiago filed a Complaint against BPD alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2018). (Compl. ¶ 35, ECF No. 1). On February 6, 2016, Santiago filed an Amended Complaint, (ECF No. 5), and on June 10, 2016, he filed a Second Amended Complaint, (ECF No. 20). Santiago seeks damages and declaratory and injunctive relief. (Id. ¶ 36).

BPD now moves for summary judgment under Federal Rule of Civil Procedure 56(a), filing its Motion on June 5, 2017. (ECF No. 43). Santiago filed an Opposition on June 30, 2017. (ECF No. 52). BPD filed a Reply on July 31, 2017. (ECF No. 57).

## II. DISCUSSION

**A. <u>Standard of Review</u>**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in

---

parties have also done in their briefing on the instant Motion.

the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises

when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.      Analysis**

Santiago brings a claim for intentional discrimination under Title VII[3] based on a failure to promote. To survive a motion for summary judgment, a Title VII plaintiff bringing such a claim must provide supporting evidence "through one of two avenues of proof:" (1) "direct or circumstantial evidence" that discrimination motivated the employer's decision not to promote the plaintiff, or (2) the "McDonnell Douglas pretext framework" that requires the plaintiff to show that the employer's proffered permissible reason for failing to promote the plaintiff "is actually a pretext for [discrimination]." Stoyanov v. Mabus, 126 F.Supp.3d 531, 541 (D.Md. 2015) (alteration in original) (internal quotation marks omitted) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004)). Here, Santiago elects to provide evidence only through the second avenue, the familiar McDonnell Douglas framework.

---

[3] Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

6

Under McDonnell Douglas, a Title VII plaintiff must first establish a prima facie case for discrimination. Id. (citing Hill, 354 F.3d at 285). In the failure to promote context, this means the plaintiff must show that he: "(1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for each position; and (4) was rejected for each position under circumstances giving rise to an inference of unlawful discrimination." Id. at 546–47 (citing Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005)). Once a plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate a legitimate, non [discriminatory] reason" for the failure to promote the plaintiff. Dones v. Brennan, 147 F.Supp.3d 364, 371 (D.Md. 2015) (quoting Hill, 354 F.3d at 284). If met by the employer, "the burden shifts back to [the plaintiff] to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. (alteration in original) (quoting Hill, 354 F.3d at 284).

Here, the parties do not dispute that Santiago has met the first two elements of a prima facie case. Nor do the parties dispute that BPD has sufficiently articulated a legitimate, nondiscriminatory reason for failing to promote Santiago: his recent disciplinary record. While the parties dispute whether Santiago meets the other two elements of a prima facie case, the Court need not address them. Even assuming Santiago establishes a prima facie case, the Court concludes that he fails to establish that his recent disciplinary record was simply a pretext for discrimination.

---

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

In failure to promote cases, a plaintiff may prove pretext by showing that he was "better qualified" than the candidates selected or by "amassing circumstantial evidence that otherwise undermines the credibility" of the employer's articulated reason for not promoting him. Whitehurst v. Sebelius, No. WDQ-11-3092, 2012 WL 3116142, at *7 (D.Md. July 26, 2012) (quoting Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006)).

In this case, Santiago offers circumstantial evidence of pretext. He compares himself to Candidate 6, a non-Hispanic officer who was in the same group of five as Santiago that BPD promoted.

When examining circumstantial evidence, courts should consider the "probative value" of the evidence that "the employer's explanation is false." Smith v. Renal Treatment Ctrs.-Mid-Atl., Inc., No. RDB-16-3656, 2018 WL 950018, at *9 (D.Md. Feb. 20, 2018) (quoting Holland v. Wash. Homes, Inc., 487 F.3d 208, 215 (4th Cir. 2007)). Of course, a plaintiff is "not required as a matter of law to point to a similarly situated . . . comparator in order to succeed" on a failure to promote claim, but such comparator evidence is "'especially relevant' to a showing of pretext." Laing v. Fed. Express Corp., 703 F.3d 713, 720–21 (4th Cir. 2013) (alteration in original) (first quoting Bryant v. Aiken Reg'l Med. Centers Inc., 333 F.3d 536, 545 (4th Cir. 2003), then quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973)).

When offering comparator evidence to support a failure to promote claim, it is "the perception of the decision maker which is relevant." Davis v. Mabus, 162 F.Supp.3d 467,

478 (D.Md. 2016) (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)). A plaintiff, therefore, may not compare himself to other employees "on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination." Hux, 451 F.3d at 315. Similarly, a plaintiff "may not choose the areas in which [he] wants to compete . . . for the promotion." Id. at 318 (second alteration in original) (quoting Westinghouse, 406 F.3d at 270). Finally, the employer's criteria for evaluating employees for promotion, itself, is not a sufficient basis for demonstrating pretext. See Westinghouse, 406 F.3d at 269 ("[W]e leave to the employer's discretion the method of evaluating an employee's job performance." (quoting Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997))).

Here, Santiago argues that a comparison between him and Candidate 6 is sufficient evidence for a reasonable jury to find that BPD's stated reason for not promoting him, his recent disciplinary record, was merely a pretext for discrimination. The Court disagrees.

The parties do not dispute that Candidate 6 was promoted to Sergeant while the Commissioner continued to pass over Santiago for the promotion, even though Candidate 6 had an Internal Affairs investigation pending. Internal Affairs eventually sustained the allegations against Candidate 6. (Def.'s Mot. Ex. 23 ["Candidate 6 Mem."] at 9, ECF No. 44-10).[4] The allegations were "general misconduct" and "neglect of duty" for disregarding General Order R-6, which encouraged officers to have confidential informants sign payment

---

[4] Page citation in this Memorandum Opinion reflects pagination the Court's electronic

9

receipts when the informants receive payment. (Id. at 2, 8–9). Santiago contends that because the Trial Board acquitted him of all the charges related to theft, his lone sustained charge of mishandling property makes him similarly situated to Candidate 6, for which Internal Affairs sustained allegations of mishandling payment receipts. So, Santiago reasons, if the Trial Board could find that he only mishandled evidence, "put[ting] him in a similar category of offense as Candidate 6," then "so could a reasonable jury." (Pl.'s Mem. Opp. Mot. Summ. J. ["Pl.'s Opp."] at 14, ECF No. 52). Santiago's reasoning is flawed.

Whether a reasonable jury may find the same facts as the Trial Board obfuscates what Santiago must show to survive summary judgment. Santiago must show sufficient "circumstantial evidence that otherwise undermines the credibility" of BPD's stated reason for not promoting him. See Whitehurst, 2012 WL 3116142, at *7 (quoting Hux, 451 F.3d at 315). Santiago attempts to meet this requirement by comparing himself to Candidate 6 solely in terms of the charges the Trial Board sustained. But the Trial Board only considered whether Santiago committed theft or mishandled evidence. (Def.'s Mot. Ex. 12 at 1–4, ECF No. 43-15). By contrast, a jury must compare Santiago to Candidate 6 from the perspective of BPD. See Davis, 162 F.Supp.3d at 478 (quoting DeJarnette, 133 F.3d at 299). BPD's perspective is not so limited. From BPD's perspective, it was deciding the broader issue of whether to promote Santiago, and the Trial Board's findings were just one piece of Santiago's entire disciplinary record.

---

docket assigned.

As a result, by exclusively comparing sustained charges between himself and Candidate 6, Santiago does not heed Hux's warning that a plaintiff may not compare himself to other employees "on the basis of a single evaluative factor"—here, sustained charges— "artificially severed from the employer's focus on multiple factors in combination"—here, Santiago's entire disciplinary record. See 451 F.3d at 315. Likewise, Santiago chose "the areas in which [he] wants to compete . . . for the promotion" by focusing merely on sustained charges. Id. at 318 (second alteration in original) (quoting Westinghouse, 406 F.3d at 270). Thus, whether a comparison to Candidate 6 is enough circumstantial evidence to survive summary judgment does not depend on simply how similar their sustained charges are.

Instead, from BPD's perspective, Santiago's recent disciplinary history also reveals that Internal Affairs sustained the allegations related to theft and referred the incident to a Charging Committee after an investigation. The Charging Committee then issued charges of conduct unbecoming of an officer, knowingly making a false statement, intentional violation of a law, unsatisfactory performance, failing to act with integrity, and mishandling property against Santiago. Not so with Candidate 6. Candidate 6 was only under investigation for having confidential informants sign payment receipts before receiving payment, a practice which was not even "specifically enumerated or laid down" as prohibited by General Order R-6. (Candidate 6 Mem. at 2, 8–9).

To be sure, in the end the Trial Board acquitted Santiago of his charges related to theft. Nevertheless, from BPD's perspective, Santiago's vindication by the Trial Board does

11

not erase the conclusions of Internal Affairs and the Charging Committee from its consideration. There is evidence that BPD considered the Trial Board's findings but that BPD still decided not to promote Santiago because of those prior conclusions. (Rodriguez Dep. 38:5–39:4, May 5, 2017, ECF No. 43-14). What is more, to establish pretext, Santiago may not challenge the criteria BPD considered for evaluating Santiago and other officers for promotion. See Westinghouse, 406 F.3d at 269 (quoting Beall, 130 F.3d at 620). Thus, Santiago's recent disciplinary history is materially different from Candidate 6's.

Santiago tries to cast doubt on BPD's stated reasons for passing him over by highlighting that Candidate 6 was promoted while Candidate 6's Internal Affairs investigation was still pending, contrary to BPD policy. Whereas Santiago, he points out, was not promoted due to the policy and eventually received an increased punishment, even after the Trial Board acquitted him of the charges related to theft. His argument is unavailing.

BPD made Candidate 6 eligible for promotion on April 8, 2013. (Def.'s Mot. Ex. 22 at 2). Significantly, by this point Internal Affairs had sustained Santiago's charges related to theft and the Charging Committee already issued those charges against him, but the Trial Board had not yet acquitted him. (Compare Def.'s Mot. Ex. 9 at 8, ECF No. 43-12 (showing that the charging documents were served on Santiago on Mar. 18, 2013) with Def.'s Mot. Ex. 12 at 1 (demonstrating that the Trial Board hearing took place on Nov. 6, 2013)). Yet for Candidate 6, though the promotion was contrary to BPD policy, Internal Affairs was only

12

investigating whether he violated BPD policy related to when informants signed payment receipts (Candidate 6 Mem. at 2, 8–9). It was not investigating any more serious charges.[5]

Thus, the differences between Santiago's and Candidate 6's disciplinary history when BPD promoted Candidate 6 is consistent with its stated reason for passing over Santiago and promoting Candidate 6.

In sum, Santiago and Candidate 6 are not similarly situated. Santiago does not offer any other circumstantial evidence of pretext.[6] The Court, therefore, concludes that Santiago has not shown sufficient evidence for a reasonable jury to find that BPD's reason for not

---

[5] Santiago asserts that Internal Affairs was also investigating Candidate 6 for "possible theft of funds" in an attempt to liken that investigation to Internal Affairs' investigation of Santiago. (Pl.'s Opp. at 14). Santiago relies on the fact that Candidate 6 was charged with "misconduct" and "neglect of duty." (Candidate 6 Mem. at 2). Santiago also relies on a statement given by a witness in the investigation that said he saw a "discrepancy" between the number of warrants related to the informants and the fees paid to them, which "would raise another eyebrow" about "possible issues" with having blank receipts signed ahead of time. (Pl.'s Opp. Mot. Summ. J. Ex. 7 at 4, ECF No. 53-1).

The record does not support Santiago's assertion. Internal Affairs did investigate Candidate 6 for misconduct and neglect of duty, but only for violating General Order R-6—which should have prompted officers to have informants sign payment receipts when they receive payment and does not address theft. (Candidate 6 Mem. at 2, 8–9). There is no evidence in the record that Internal Affairs investigated Candidate 6 for theft. Santiago does not offer any evidence that the "discrepancy" observed by one witness in the investigation was, or ever became, an allegation for which Internal Affairs investigated Candidate 6. In fact, the witness does not identify the "possible issues" to which he was referring. (See Pl.'s Opp. Mot. Summ. J. Ex. 7).

[6] Santiago also submits that Deputy Commissioner Jeronimo Rodriguez, admittedly junior to Commissioner Anthony Batts, was nonetheless the person "principally responsible" for passing over Santiago or the "actual decisionmaker" behind that decision. (Pl.'s Opp. at 11–12 (quoting Vicino v. Maryland, 982 F.Supp.2d 601, 610 (D.Md. 2013))). The Court does not reach the issue, however. Even assuming Rodriguez was principally responsible for passing over Santiago, for the foregoing reasons Santiago has not offered sufficient evidence

promoting him was merely a pretext for discrimination.  Accordingly, the Court will grant BPD's Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will grant BPD's Motion for Summary Judgment (ECF No. 43).  The Court will enter judgment in favor of BPD.  A separate order follows.

Entered this 30th day of March, 2018             /s/
George L. Russell, III
United States District Judge

---

that BPD's stated reason for the decision was a pretext for discrimination.